UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
COURT FILE NO.: _____

Debra Nimz,

       Plaintiff,

v.

TRS Recovery Services, Inc. and TeleCheck Services Inc.,

       Defendant

**COMPLAINT**

**WITH JURY TRIAL DEMAND**

## PRELIMINARY STATEMENT

1. Plaintiff brings this action for damages against Defendants for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive, or unfair practices.

## JURISDICTION

2. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

## PARTIES

3. Plaintiff Debra Nimz (hereinafter "Plaintiff") is a natural person who resides in the city of Brooklyn Park, County of Hennepin, State of Minnesota. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

1

4. Defendant TRS Recovery Services, Inc. (hereinafter "TRS") is a foreign corporation incorporated under the laws of the state of Colorado, and is an affiliate of Defendant TeleCheck Services, Inc. TRS regularly engages in debt collection and is a "debt collector" as defined at 15 U.S.C. § 1692a(6).

5. Defendant TeleCheck Services, Inc. (hereinafter "TeleCheck") is a foreign corporation incorporated under the laws of the state of Delaware, and is an affiliate of Defendant TRS. TeleCheck regularly engages in debt collection and is a "debt collector" as defined at 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

6. On February 28, 2008 Plaintiff issued a check (#6420) to Red Dragon Liquors (hereinafter "RDL"), now known as "Tri Star Liquors," in the amount of $16.36.

7. RDL immediately processed the check on February 28, 2008, utilizing Defendant TeleCheck's electronic processing system, and $16.36 was immediately deducted from Plaintiff's checking account.

8. RDL kept the physical paper check and presented it to US Bank on March 3, 2008, causing the amount of $16.36 to be deducted from Plaintiff's account for a second time in error.

9. On March 4, 2008 Plaintiff accessed her checking account information online and noticed that she had been charged twice for her purchase made at RDL on February 28, 2008.

10. Plaintiff immediately contacted her bank on March 4, 2008, causing her bank to open a fraud investigation with regard to the duplicate deductions for the single transaction.

11. Plaintiff's bank confirmed that check #6420 had been paid twice and thereby credited her checking account in the amount of $16.36, the amount of the overpayment.

12. Shortly before 9:00 p.m. on March 19, 2008 Defendant TRS called Plaintiff's home in an attempt to collect the alleged debt based on check #6420, in addition to other fees, despite the fact that Plaintiff had already paid RDL for the purchases made on February 28, 2008.

13. Plaintiff disputed the alleged debt and explained that she had already paid, and that the check had been cashed twice in error.

14. On March 21, 2008 Plaintiff went directly to the merchant, RDL, and explained what had happened with check #6420 and Defendant TRS's attempt to collect from her.

15. Plaintiff gave her bank statements to RDL that proved the check had been paid, and RDL told Plaintiff it would take care of the matter and fax the proof to Defendants.

16. Upon information and belief, Defendants were notified that there was no debt to collect from Plaintiff.

16. On March 22, 2008 Defendant TRS ignored Plaintiff's truthful explanation and proof that the alleged debt had already been paid, and placed a collection call to her home at or about 8:10 a.m. and 9:10 a.m. in violation of 15 U.S.C. § 1692d.

17. Plaintiff attempted to answer those calls; however, Defendant did not respond when Plaintiff picked up the phone.

18. Defendant TRS placed another collection call at or about 10:10 a.m. that same morning in violation of 15 U.S.C. §1692d, and spoke with Plaintiff regarding the alleged debt.

19. Plaintiff again explained the situation to Defendant TRS, and Defendant instructed her to call "Diron" at 1-800-927-0599.

20. On March 24, 2008 Plaintiff attempted to fax her bank statements to the number provided to her by Defendant TRS on or about March 19, 2008 during one of her initial conversations with Defendant, but (713) 332-9274 was not valid and she was therefore unable to send the documents to Defendant.

21. Plaintiff then attempted to contact Defendant TRS's agent Diron on March 24, 2008 but was told he was not in the office.

22. Defendant TRS called Plaintiff's home again on March 29, 2008 in violation of 15 U.S.C. §1692d and spoke with Plaintiff.

23. Plaintiff again explained what had happened with regard to the check and described her efforts at trying to resolve the situation, including her previous conversations with Defendant TRS.

24. Defendant TRS told Plaintiff she needed to speak with someone in the "Recovery Department" and gave Plaintiff a fax number for her to use to send her bank statements.

25. On March 31, 2008 Plaintiff successfully faxed her bank statements to Defendant at the number provided: (713) 332-7933.

26. Plaintiff also called Defendant TRS on March 31, 2008 to let it know she had faxed the information it had requested, and asked Defendant to confirm the dispute had been resolved.

27. Plaintiff was told that TRS had the documentation she faxed and that it would take 10 days for an investigation of her dispute to occur.

28. On April 2, 2008 Plaintiff called Defendant TRS and spoke with its agent "Erica" and inquired as to the status of her dispute, but was told she would have to wait another 10 days for any resolution.

29. Upon information and belief, Defendants placed a "hold" on Plaintiff's checking account so that any merchant who utilized the Telecheck system to electronically process checks would not accept a check from Plaintiff for the payment of goods or services in violation of 15 U.S.C. §§ 1692d, 1692e, 1692e(5), and 1692f.

30. During her conversation with Erica on April 2, 2008, Plaintiff told Defendant she was concerned that Defendants had placed a hold on her checking account.

31. Defendant TRS's agent told Plaintiff it had not done so and lied that it was US Bank that had placed the hold on her account in violation of 15 U.S.C. § 1692e(10).

32. Plaintiff immediately called US Bank, and was told that it had not placed a hold on her account.

33. Plaintiff called Defendant TRS again on April 2, 2008 and requested to speak with a supervisor and was placed on hold for several minutes.

34. Plaintiff eventually spoke to another agent of Defendant TRS, who told Plaintiff there was nothing that could be done about the hold on her check writing privileges.

35. On April 6, 2008 Defendant TRS placed another collection to Plaintiff's home at 8:10 a.m. but did not respond when Plaintiff answered the phone, all in violation of 15 U.S.C. §§ 1692d, 1692e(5), 1692g(b).

36. Defendant called again on April 6, 2008 at 9:10 a.m. but again did not respond when Plaintiff answered the phone in violation of 15 U.S.C. §§ 1692d, 1692e(5), 1692g(b).

37. Plaintiff called Defendant TRS back on April 6, 2008 and told Defendant to stop calling her home.

38. Despite its conversation with Plaintiff that morning, Defendant TRS placed collection calls to her home again at or about 4:00 p.m., 5:00 p.m., and 6:00 p.m. on April 6, 2008, in violation of 15 U.S.C. §§ 1692d, 1692e(5), 1692g(b).

39. Defendant TRS responded to Plaintiff when she picked up the phone after the call placed at or about 6:00 p.m.

40. Plaintiff told Defendant's agent she had already explained the situation to Defendant TRS, that she did not owe a debt, to which Defendant's agent responded with a simple "thank you" and hung up on Plaintiff.

41. Plaintiff immediately called back Defendant TRS and spoke to an agent in the Recovery Department.

42. Plaintiff was told that she did not have the correct fax number and was supposedly given the correct number for the Recovery Department.

43. On April 7, 2008 Plaintiff again faxed her bank statements to Defendant TRS's Recovery Department at (763) 332-3599 as directed by Defendant TRS on April 6, 2008.

44. On April 10, 2008 Plaintiff called Defendant TRS to check the status of her dispute, but was told that only the Recovery Department had the call history related to Plaintiff's account, and that there was nothing to report about her dispute.

45. Defendant TRS's agent gave Plaintiff another number to call for the Recovery Department, but that number simply brought Plaintiff to a recorded message telling her where to send dispute information.

46. On April 10, 2008 Plaintiff called Defendant TRS again to get help with her dispute about the hold on her check writing privileges which had still not been resolved.

47. After several transfers, Plaintiff spoke with Defendant's agent "Maria" who told Plaintiff that she would have to speak with someone in the "electronic check department," but that she did not have the ability to transfer Plaintiff.

48. Despite Plaintiff's efforts as described above, Defendants have continued their attempt to collect the alleged debt from Plaintiff in violation of 15 U.S.C. §§ 1692d, 1692e(5), 1692e(10), 1692f, 1692g, and 1692g(b).

49. Defendants have never provided validation of the alleged debt in violation of 15 U.S.C § 1692g.

50. Defendants maliciously reported the debt that Plaintiff does not owe to the credit reporting agencies as a collection account and not "disputed" for Tri Star Liquors in violation of 15 U.S.C. § 1692e(8).

51. On July 9, 2008 and July 10, 2008, Plaintiff's personal checks were denied by the TeleCheck electronic processing system at Thrift-Way in Minneapolis, MN and her checks were not accepted by the merchant as a form of payment for the items she sought to purchase.

52. Defendants have "blacklisted" Plaintiff so that she is unable to pay for goods or services with a personal check at any place of business where the Telecheck system is utilized in processing checks in violation of 15 U.S.C. § 1692d, 1692e, 1692e(2)(A), 1692e(10), and 1692f.

53. In violating the aforementioned provisions of the FDCPA, Plaintiff has suffered emotional distress, damage to her credit history, anxiety, frustration, and cannot

use a personal check at any place of business that utilizes the TeleCheck processing system.

54. As a result of the above violations of the FDCPA, Defendant is liable to Plaintiff for her actual damages, statutory damages, and costs and attorney's fees, pursuant to 15 U.S.C. § 1692k.

## TRIAL BY JURY

55. Plaintiff is entitled to and hereby requests a trial by jury. US Const. Amend. 7. Fed. R. Civ. P. 38.

## CAUSES OF ACTION

### COUNT I.

### VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. § 1692 ET SEQ.

56. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully stated herein.

57. The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the FDCPA, including but not limited to each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq.

58. As a result of Defendant's violations of the FDCPA, Plaintiff has suffered and is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from Defendant.

## COUNT II.

## DEFAMATION OF CREDIT

59. Plaintiff incorporates by reference the preceding paragraphs as though fully stated herein.

60. Defendants maliciously communicated to third parties that Plaintiff owed a debt when they knew or should have known the debt was not owed.

61. Defendants' false communications, acts and omissions resulted in defamation of the Plaintiff.

62. Defendants' false communications, acts and omissions harmed the reputation of Plaintiff.

63. Defendants' false communications were the type that did and/or would deter third persons from associating or dealing with Plaintiff.

64. Defendants' communications were the type that would injure Plaintiff's character, or subject her to ridicule, contempt, distrust, or would degrade her in the eyes of another.

65. Plaintiff has been seriously damaged as a result and is entitled to damages, costs and attorneys' fees.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays that relief be granted as follows:

    a. That judgment be entered against Defendants for actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b. That judgment be entered against Defendants for actual damages and the emotional distress suffered as a result of credit defamation in an amount to be determined at trial;
c. That judgment be entered against Defendants for statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A) & (B);
d. That the Court award costs and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k(a)(3); and
e. That the Court grant such other and further relief as may be just and proper.

Dated this 19th day of December, 2008         By: /s/ Thomas J. Lyons, Jr.

**CONSUMER JUSTICE CENTER, P.A.**
Thomas J. Lyons, Jr., Esq.
MN Bar No.: 249646
Trista M. Roy, Esq.
MN Bar No.: 0387737
367 Commerce Court
Vadnais Heights, Minnesota 55127
Telephone: (651) 770-9707
Facsimile: (651) 704-0907
tommycjc@aol.com

**PHILLIPS LAW, PLLC**
Michael G. Phillips, Esq.
MN Bar No.: 0290105
270 Grain Exchange Building North
301 Fourth Avenue South
Minneapolis, MN 55415
Telephone: (612) 677-8300
Facsimile: (612) 339-1516
phillipslaw@comcast.net

## VERIFICATION OF COMPLAINT AND CERTIFICATION BY PLAINTIFF

STATE OF MINNESOTA         )
                                        ) ss
COUNTY OF  HENNEPIN          )

      I, Debra Nimz, having first been duly sworn and upon oath, deposes and says as follows:

1. I am the Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorney and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendants, cause unnecessary delay to any Defendants, or create a needless increase in the cost of litigation to any Defendants, named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

                                                         /s/ Debra Nimz
                                                         Debra Nimz

Subscribed and sworn to before me
this 17th day of December, 2008.


/s/ Nathan D. Neil
Notary Public